*Sisson, Fletcher, Worrell & Hodge, Lee A. Worrell,* for petitioner.

*Francis I. McCanna, Francis A. Kelleher,* for respondent.

ANACONDA WIRE AND CABLE COMPANY *vs.* JOHN SILKE.

APRIL 2, 1948.

PRESENT: Flynn, C. J., Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. This is a petition by the employer to review a preliminary agreement under the workmen's com-

pensation act, general laws 1938, chapter 300, on the ground that the employee's incapacity had ceased or diminished, and praying that the weekly payment for total incapacity specified in that agreement be suspended or modified. Following a hearing in the superior court, a decree was entered adverse to the respondent, from which decree he has appealed to this court.

It appears in evidence that prior to 1941 the respondent was employed in the retail shoe trade. In that year he went to work for the Rheem Manufacturing Company at its shipyard in Providence, the management of which was subsequently taken over by the Walsh-Kaiser Company, Inc. As the shipyard was then apparently on a five-day week basis, the respondent worked Saturdays in Saltzman's Army & Navy Store in Pawtucket. Hereinafter the employers just mentioned will be referred to as Walsh-Kaiser and Saltzman. In addition to these two jobs, he also worked four or five hours a day as a "short shifter" for the petitioner at the rate of 73 cents an hour. On December 3, 1943 while so working he admittedly sustained a compensable injury, which necessitated the amputation of the index and middle fingers of his left hand.

On December 11, 1943 the respondent entered into a preliminary agreement with the petitioner and its insurer, the latter then having no knowledge of his employment at other places. Based upon an average weekly wage of $29.20, that is, forty times the hourly rate of 73 cents, this agreement, which was duly approved by the director of labor, provided for the payment of compensation at the rate of $17.52 a week for the duration of total incapacity. A few days later, without informing the petitioner, respondent returned to work for Walsh-Kaiser in a supervisory capacity, but he did not resume his job with Saltzman. His pay at Walsh-Kaiser for the week ending December 18, 1943 was $51.35. He continued to be so employed, with pay ranging from $66 to over $80 a week, until July 14, 1945 when the shipyard closed down. Following a period of unemploy-

ment, due according to the respondent to the refusal of employers to employ him because of the disfigurement of his hand, he went to work for the Kent Tennis Racquet Company early in January 1946 at an average weekly wage of $35 to $40 a week, and was there employed at such wages when this case was heard in the superior court in March 1946.

The petitioner, having no knowledge of respondent's employment with Walsh-Kaiser during the period following the signing of the preliminary agreement, continued to make payments for total disability in compliance with that agreement until June 13, 1945 when the petition for review now before us was filed with the director of labor. The respondent admits that, following the execution of the agreement, he was interviewed several times in 1944 and 1945 by a representative of petitioner's insurer; that on each occasion he answered only such questions as were asked of him; and that he never "volunteered" any information with reference to his reemployment at Walsh-Kaiser.

The present petition was brought under G. L. 1938, chap. 300, art. III, §13, and alleged in substance that respondent's incapacity had ended or substantially diminished. To meet the narrow issue thus raised, the respondent in the superior court urged and was allowed to introduce evidence showing that the amount of compensation specified in the agreement was based upon an erroneous wage rate. He there contended, as he does before us, that the weekly compensation to which he was entitled when the agreement was executed should have been based upon the combined earnings from all his employers, that is, Walsh-Kaiser, Saltzman, and the petitioner, and not solely upon his average weekly wage from the petitioner. Such issue was not before the court on the petition under consideration and we therefore express no opinion in the matter.

This court has consistently held that an agreement entered into by employer and employee, which has been duly approved by the director of labor, has the force and

effect of a decree of court. *Brown & Sharpe Mfg. Co.* v. *Giacoppa,* 69 R. I. 378, and cases cited. The compensation act expressly provides for the review and modification of such an agreement by either party upon the filing of a proper petition. In art. III, §13, of the act, as amended by P. L. 1941, chap. 1064, it is provided, among other things, that an agreement may be reviewed from time to time by the director of labor "upon application of either party, after due notice to the interested parties, upon the ground * * * that the weekly compensation payments have been based upon an erroneous wage rate." But the petition in the instant case was limited to the question whether respondent's incapacity had ended or diminished and nothing more. Inquiry as to matters clearly outside the scope of such a petition was improper and not consistent with the practice provided by the act. See *Vick* v. *Aubin,* 73 R. I. 508.

Therefore whatever consideration was given by the trial justice in his rescript to respondent's contention hereinbefore mentioned, and merely adverted to by us because strongly argued by the respondent in this court, was of no force and effect. In the circumstances of this case the trial justice correctly based his findings of fact on respondent's average weekly wage of $29.20, which was the amount specified in the agreement approved by the director of labor. According to his findings of fact and computation thereon, which we need not repeat here because they are not questioned by the respondent and are clearly set forth in the decree, he found that there was a credit balance in favor of the petitioner of $40.88. This computation included an allowance to the respondent of $905.20 as specific compensation in accordance with our act for the loss of the first and second fingers of his left hand.

In the argument before us it was admitted that respondent has a petition pending before the director of labor for specific compensation for the loss of his two fingers. In this situation, if the respondent elects to proceed with that

petition, then the sum of $905.20 allowed him by the trial justice as specific compensation for the loss of the fingers shall be added to the credit balance of $40.88 in favor of the petitioner, thus making such balance $946.08, so far as these proceedings are concerned.

In the special and peculiar circumstances of this case wherein the petitioner had actually paid more than the respondent was fairly entitled to, we are of the opinion that the trial justice did not err in suspending payments of compensation under the preliminary agreement from the filing of the instant petition for review on June 13, 1945.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed unless he elects to pursue his petition for specific compensation before the director of labor, in which case the decree will be modified in the manner and to the extent above mentioned, and the cause is remanded to the superior court for further proceedings.

*Henry M. Boss* and *Francis W. Conlan,* for petitioner.

*Raymond F. Henderson,* for respondent.